**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

AMY M. HOLECEK,

       Plaintiff,

vs.

CITY OF HIAWATHA,

       Defendant.

No. 09-CV-113-LRR

**ORDER**

---

### *TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **RELEVANT FACTS AND PROCEDURAL HISTORY** . . . . . . . . . . . . . . **2**
     **A.**   *Plaintiff's Employment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     **B.**   *Formation of Collective Bargaining Agreement* . . . . . . . . . . . . . . **2**
     **C.**   *Defendant's Employee Manual* . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     **D.**   *Plaintiff's Allegations of Sexual Harassment* . . . . . . . . . . . . . . . . **4**
     **E.**   *Plaintiff's Discipline and Termination* . . . . . . . . . . . . . . . . . . . . **6**
     **F.**   *Plaintiff Challenges Termination* . . . . . . . . . . . . . . . . . . . . . . . **7**
     **G.**   *Administrative Complaints* . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
     **H.**   *Commencement of Litigation* . . . . . . . . . . . . . . . . . . . . . . . . . **8**

III.  **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
     **A.**   *Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . **9**
     **B.**   *Plaintiff's Employment Discrimination Claims* . . . . . . . . . . . . . . **10**
         **1.**   *Relevant law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
             **a.**   *Title VII and Iowa Code Chapter 216* . . . . . . . . . . . **10**
             **b.**   **McDonnell Douglas** *framework* . . . . . . . . . . . . . . . **11**
         **2.**   *Plaintiff's claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
             **a.**   *Gender discrimination/disparate treatment* . . . . . . . . **12**
             **b.**   *Sexual harassment/hostile work environment* . . . . . . . **14**
             **c.**   *Retaliation* . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
             **d.**   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**
     **C.**   *Plaintiff's Wrongful Termination Claim* . . . . . . . . . . . . . . . . . . **18**
         **1.**   *Progressive discipline procedure/contractual interest* . . . . . . **18**
         **2.**   *Due process/liberty interest* . . . . . . . . . . . . . . . . . . . . . **20**

       3.     *Public policy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

       4.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

   **D.**    **Plaintiff's Back Wages Claim** . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

   **E.**    **Iowa's Open Meeting Law** . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

**IV.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

## I. INTRODUCTION

The matters before the court are: (1) Defendant City of Hiawatha's "Motion for Summary Judgment" ("Defendant's Motion") (docket no. 8); and (2) Plaintiff Amy M. Holecek's "Motion for Partial Summary Judgment" ("Plaintiff's Motion") (docket no. 10). The court collectively refers to Defendant's Motion and Plaintiff's Motion as the "Motions."

## II. RELEVANT FACTS AND PROCEDURAL HISTORY[1]

### A. Plaintiff's Employment

On or about June 9, 2004, Plaintiff began working for Defendant as a seasonal worker. Plaintiff's title was "Parks/Public Works General Laborer." Complaint (docket no. 2) at ¶¶ 8-9; Answer (docket no. 5) at ¶¶ 8-9. On November 29, 2004, Defendant hired Plaintiff to work as a full-time employee with the same title.

### B. Formation of Collective Bargaining Agreement

In 1996, prior to Plaintiff's employment with Defendant, the Iowa Public Employment Relations Board ("PERB") entered an Order of Certification identifying Teamsters Local 238 as the exclusive bargaining representative for Defendant's employees who worked as "full-time public service employees in the maintenance team including Equipment Operator/Laborer, Leadworker, and Equipment Mechanic III." Defendant's Statement of Material Undisputed Facts ("Def. Statement of Facts") (docket no. 8-1) at

---

[1] Because Defendant's Motion is dispositive, the court will view the facts in the light most favorable to Plaintiff.

¶ 3; Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Pl. Response") (docket no. 9-1) at ¶ 3. Thereafter, Defendant and Teamsters Local 238 entered into a collective bargaining agreement ("CBA") covering "all full-time public service employees in the maintenance department including Equipment Operator/Laborer, Foreman and Equipment Mechanic III and exclud[ing] all employees of the Water Department, Supervisors, and all others excluded by the Act." Plaintiff's Appendix ("Pl. App'x") (docket no. 9-3 to 9-5) at 125.

Defendant and Teamsters Local 238 periodically updated the CBA, and the subsequent versions included similar language. The agreements effective July 1, 2003, through June 30, 2006, and July 1, 2006 through June 30, 2009 stated, "Employees covered under this Agreement include all full-time public service employees in the maintenance department including Equipment Operator/Laborer and Foreman. All other employees of the Water Department, Supervisors, and all others excluded by the Act" ("bargaining unit"). Pl. App'x at 108-110; Defendant's Appendix ("Def. App'x") (docket no. 8-3) at 1.

Defendant did not consider Plaintiff to be part of the bargaining unit and did not pay Plaintiff according to the pay scale set forth in the CBA. Plaintiff wore the same uniform as each of the recognized members of the bargaining unit and was the only female who performed maintenance duties for Defendant. After Plaintiff's termination, Defendant hired a male to replace her and paid the male employee a higher hourly wage than it paid Plaintiff.

### C. Defendant's Employee Manual

During Plaintiff's employment, Defendant provided Plaintiff with a copy of Defendant's Employee Policy Manual ("Manual"). The Manual indicated that Defendant would conduct a formal review for each employee one time per year. The Manual also included a progressive discipline procedure, which provided, "[u]nacceptable behavior

which does not lead to immediate dismissal may be dealt with in the following manner: 1. Oral Counseling[;] 2. Written Warning[;] 3. Decision-Making Paid or Non-Paid Leave[;] 4. Termination." Complaint at ¶¶ 15-16; Def. App'x at 17. The Manual explained, "[w]hile the disciplinary action may progress from the lowest to the highest form of discipline depending on the severity of the infraction, there may be certain infractions which are serious enough to warrant **skipping some or all** of the lower levels and taking more severe action immediately." Def. App'x at 17 (emphasis in original).

The Manual stated, in bold-face type, the following:

> Although we sincerely hope that your employment relationship with [Defendant] will be long term, this relationship may be terminated by you or [Defendant] at any time, for any reason, with or without cause. Nothing in this [Manual] changes the at-will nature of your employment with [Defendant].

Def. App'x at 16; Def. Statement of Facts at ¶ 13; Pl. Response at ¶ 13. Plaintiff signed an "Employment Acknowledgment Form," which indicated that she received a copy of the Manual and understood that the Manual was not a contract or a guarantee of employment with Defendant. Def. App'x at 16; Def. Statement of Facts at ¶ 13; Pl. Response at ¶ 13.

The Manual also contained a policy that strictly prohibited sexual harassment and set forth a harassment complaint procedure. Def. Statement of Fact sat ¶ 11; Pl. Response at ¶ 11; Def. App'x at 26.

### D. Plaintiff's Allegations of Sexual Harassment

On May 19, 2005, an individual told Plaintiff that Plaintiff received preferential treatment at work regarding a safety issue. Plaintiff provided a written complaint about the incident to her supervisors, stating that she "believed the comment was unnecessary and rude." Def. Statement of Facts at ¶ 5; Pl. Response at ¶ 5. In the written complaint, Plaintiff alleged the same individual had made impolite comments about her and other employees on other occasions.

In May 2007, Plaintiff again complained of harassment. Plaintiff told her

supervisor that a male employee told Plaintiff that he was watching her from his apartment with binoculars while she was at the farmer's market. Plaintiff stated that the male employee made the comment twice and Plaintiff hoped that it would not turn into a sexual harassment problem. Def. Statement of Facts at ¶ 6; Pl. Response at ¶ 6.

Rod Jasa, Plaintiff's supervisor until April 2008, made derogatory comments to her on "ten to twenty" occasions by telling her to "get a haircut." Def. Statement of Facts at ¶ 8(a); Pl. Response at ¶ 8(a). To Plaintiff's knowledge, Jasa did not make any additional derogatory comments after April 2008. Jasa engaged in other conduct that Plaintiff perceived as harassment on the following dates: On December 1, 2007, Plaintiff was called into work to plow snow and Jasa asked to smell her breath; In March 2008, Jasa was planning to go on a cruise and stated, "I want a girl in a swimsuit with a body like [Plaintiff]"; On August 28, 2008, Jasa raised his middle finger at Plaintiff; and, on "many" occasions, Jasa sarcastically told Plaintiff, "You're the man!" Def. Statement of Facts at ¶¶ 8(b), (c), (e), & (f); Pl. Response at ¶¶ 8(b), (c), (e), & (f).

On March 22, 2007, Plaintiff was attending the same training session as three of her male co-workers, but the men drove together and Plaintiff had to drive to the training by herself. Plaintiff's male co-workers did not speak to her during the training session. Def. Statement of Facts at ¶ 8(d); Pl. Response at ¶ 8(d).

In late September or early October of 2008, an individual named Jason Rimrodt was assigned to do community service for Defendant as a result of a criminal conviction. Plaintiff had concerns about Rimrodt working in the parks, so she did not call him or supervise him as instructed by her supervisor. Because Plaintiff did not hold a supervisory position with Defendant, she did not feel it was her responsibility to supervise Rimrodt. Plaintiff later met with Rimrodt and he "made sexually suggestive and harassing comments to Plaintiff which Plaintiff reported to her supervisor." Complaint at ¶ 19; Def. Statement of Facts at ¶¶ 8(g)-10; Pl. Response at ¶¶ 8(g)-10. Rimrodt asked Plaintiff to come to his

house to see his collection of disc golf frisbees.  Plaintiff believed this comment had sexual undertones and was inappropriate for the workplace.  Plaintiff experienced other incidents of what she perceived to be harassment, but she did not report "many of the incidences" to her supervisor because she "witnessed firsthand nothing would come about."  Def. Statement of Facts at ¶ 12; Pl. Response at ¶ 12.

### E.  Plaintiff's Discipline and Termination

On October 8, 2007, Plaintiff's supervisor issued Plaintiff an "Employee Warning Report."  Def. App'x at 34; Def. Statement of Facts at ¶ 15; Pl. Response at ¶ 15.  The report stated Plaintiff had "repeated unauthorized contact with contracted services, employees, and volunteers," and had made "negative comments regarding supervisors."  Def. App'x at 34; Def. Statement of Facts at ¶ 15; Pl. Response at ¶ 15.  Plaintiff admits that she signed the warning report, but she denies the allegations set forth in the report.  Pl. Response at ¶ 15.

On April 10, 2008, two of Plaintiff's supervisors issued a memorandum placing Plaintiff on a two-day "decision making leave."  Def. App'x at 39-42; Def. Statement of Facts at ¶ 16; Pl. Response at ¶ 16.  The memorandum detailed incidents that occurred on seven different dates which served as the basis for the unpaid leave.  Plaintiff signed the memorandum and admits that she read and understood the statements in the memorandum, but she denies the accuracy of the allegations made therein.

On April 14, 2008, Plaintiff's supervisor notified Plaintiff that she would be on a period of probation until the end of May and Plaintiff would be terminated if her work was unsatisfactory.  On June 11, 2008, Plaintiff's supervisor notified Plaintiff that her work was satisfactory and she was no longer on probation.

On October 13, 2008, Plaintiff's supervisor terminated Plaintiff's employment.  Plaintiff's supervisor stated the grounds for termination were Plaintiff's failure to maintain a flower bed and Plaintiff's refusal to communicate with Rimrodt.  Plaintiff asserts neither

of these grounds were "the true reason for her termination." Pl. Response at ¶ 19.

### F. Plaintiff Challenges Termination

On October 16, 2008, Plaintiff challenged her termination by submitting an "Employee Grievance Form" to Defendant in accordance with the policies set forth in the Manual. Def. App'x at 50-54; Def. Statement of Facts at ¶ 20; Pl. Response at ¶ 20. On October 20, 2008, the City Administrator responded by denying the grievance. Def. App'x at 55; Def. Statement of Facts at ¶ 21; Pl. Statement of Facts at ¶ 21. Plaintiff continued to follow the Manual's grievance process by submitting her grievance to the Hiawatha City Council. Def. App'x at 56; Def. Statement of Facts at ¶ 22; Pl. Response at ¶ 22. In the grievance, Plaintiff sought, among other types of relief, reinstatement and monetary compensation for Plaintiff's unpaid leave and "emotional and physical duress." Def. App'x at 54; Def. Statement of Facts at ¶ 23; Pl. Response at ¶ 23. Plaintiff explained that appropriate monetary compensation would need to be determined through negotiation between Defendant and Plaintiff's attorneys. Plaintiff included with the grievance a letter to the City Council and noted at the bottom of the letter that a copy had been sent to her attorneys and to Teamsters Local 238.

On November 10, 2008, at 6:00 p.m., the City Council held a meeting to review Plaintiff's grievance. Plaintiff attended the meeting with her attorney. At the outset of the meeting, the City Council voted to close the meeting, pursuant to Iowa Code section 21.5(1)(c), which permits a governmental body to hold a closed meeting to discuss strategy with counsel in matters that are presently in litigation or where litigation is imminent. At the time of the meeting, Plaintiff had neither commenced litigation against Defendant, nor directly threatened Defendant with litigation. At the conclusion of the closed session, the City Council conducted an open meeting from 6:54 p.m. to 9:10 p.m. During the open meeting, Plaintiff, Plaintiff's supervisor and the City Administrator each had an opportunity to speak and Council members asked them questions. The City Council

examined various documents, and, at the conclusion of the meeting, the City Council voted to uphold Plaintiff's termination by a vote of 4 to 1.

### G. Administrative Complaints

Plaintiff timely filed a complaint of employment discrimination with the Iowa Civil Rights Commission ("ICRC") and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff also filed a "Prohibited Practice Complaint" with PERB, alleging that Defendant failed to recognize Plaintiff's membership in the bargaining unit and to pay her under the terms of the CBA. Def. Statement of Facts at ¶ 29; Pl. Response at ¶ 29; Def. App'x at 75. Subsequently, the ICRC issued Plaintiff an Administrative Release, the EEOC issued Plaintiff a Notice of Right to Sue, and a PERB Administrative Law Judge ("ALJ") dismissed as untimely Plaintiff's Prohibited Practice Complaint against Defendant. Plaintiff appealed the ALJ's dismissal, and PERB affirmed.

### H. Commencement of Litigation

On August 17, 2009, Plaintiff commenced the instant action with the filing of a five count Complaint. Count I alleges gender discrimination, sexual harassment and retaliation against Defendant in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Count II alleges gender discrimination, sexual harassment and retaliation against Defendant in violation of the Iowa Civil Rights Act ("ICRA"), Iowa Code Chapter 216. Count III alleges that Defendant violated Plaintiff's right to due process when Defendant "failed to follow the progressive discipline policy outlined in the Manual," and "failed to provide Plaintiff with a fair hearing regarding her termination[.]" Complaint at ¶¶ 47, 49. Count IV alleges that Defendant wrongly failed to pay Plaintiff in accordance with the pay scale set forth in the CBA and failed to provide Plaintiff with opportunities for promotion and salary increases. Finally, Count V alleges that the City Council held a closed meeting in violation of Iowa Code section 21.3. On September 11, 2009, Defendant filed an Answer to the Complaint.

On July 23, 2010, Defendant filed Defendant's Motion. On August 13, 2010, Plaintiff filed a Resistance (docket no. 9) to Defendant's Motion. On August 18, 2010, Defendant filed a Reply (docket no. 11).

On August 16, 2010, Plaintiff filed Plaintiff's Motion. On August 25, 2010, Defendant filed a Resistance (docket no. 12) to Plaintiff's Motion.

### III. ANALYSIS

#### A. Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which

show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

Furthermore, "summary judgment is disfavored in employment discrimination cases" because such cases are "inherently fact-based." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005). In an employment discrimination case, summary judgment should be granted only "if the evidence could not support any reasonable inference of discrimination." *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1055 (8th Cir. 2007).

### B. Plaintiff's Employment Discrimination Claims

### 1. Relevant law

#### a. Title VII and Iowa Code Chapter 216

Title VII prohibits employers from discriminating against any individual based on sex with respect to compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1). "'Discrimination based on sex that creates a hostile or abusive working environment violates Title VII.'" *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008) (quoting *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1143 (8th Cir.

2007)).  It is also an unlawful employment practice "for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter[.]"  42 U.S.C. § 2000e-3(a).

Similarly, Iowa Code section 216.6(1)(a) makes it an unfair or discriminatory practice for any person "to discharge any employee, or to otherwise discriminate in employment against . . . any employee because of the . . . sex . . . of such . . . employee[.]"  Under Iowa Code section 216.11(2), it is also unfair or discriminatory for any person to "retaliate against another person in any of the rights protected against discrimination by this chapter because such person has lawfully opposed any practice forbidden under this chapter, . . . or has filed a complaint, testified, or assisted in any proceeding under this chapter."

Although Iowa courts are not controlled by federal law when evaluating ICRA claims, "[t]he ICRA was modeled after Title VII of the United States Civil Rights Act." *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999).  "Iowa courts therefore traditionally turn to federal law for guidance in evaluating the ICRA," and courts should analyze claims under ICRA and Title VII under the same framework.  *Id.*; *see also Montgomery v. John Deere & Co.*, 169 F.3d 556, 558 n.3 (8th Cir. 1999) ("[D]iscrimination claims alleged under the Iowa Civil Rights Act are analyzed in the same manner as their federal law counterparts."); *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 10 (Iowa 2009) (turning to federal law for guidance in evaluating ICRA claim).

### b.    McDonnell Douglas *framework*

There are two ways to survive an employer's motion for summary judgment in a Title VII discrimination claim: (1) the employee may produce direct evidence of discrimination; or (2) "[i]f the employee lacks direct evidence of discrimination, [s]he can survive summary judgment by showing a genuine dispute for trial under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S.

792, 802-05 (1973)." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).

Because Plaintiff presents no direct evidence of discrimination, the court will apply the analytical framework set forth in *McDonnell Douglas* to her claims of sex discrimination, sexual harassment and retaliation. "Under this framework, the plaintiff bears the burden of establishing a prima facie case of discrimination." *McGinnis v. Union Pacific R.R. Co.*, 496 F.3d 868, 873 (8th Cir. 2007). "The establishment of a prima facie case creates a presumption of unlawful discrimination, which in turn requires a defendant to come forward with evidence of a legitimate, nondiscriminatory reason for the defendant's actions." *Id.* Finally, if the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate the defendant's proffered reason is pretextual. *Id.*

### 2. *Plaintiff's claims*

#### a. *Gender discrimination/disparate treatment*

Plaintiff asserts that "Defendant discriminated against Plaintiff on the basis of her sex in the terms of her employment." Complaint at ¶ 37. "To establish a prima facie case of gender discrimination, [Plaintiff] must establish (1) she was a member of a protected class, (2) she was qualified for her job, (3) she suffered an adverse employment action, and (4) there are facts that give rise to an inference of gender discrimination." *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007). Plaintiff easily satisfies the first three prongs of this test. First, Plaintiff is a female. Second, viewing the facts in the light most favorable to Plaintiff, she was qualified for her job. Third, Plaintiff suffered an adverse employment action when she was terminated.

Defendant argues that Plaintiff cannot satisfy the fourth requirement of a prima facie case because the circumstances do not give rise to an inference of gender discrimination. The court agrees. During Plaintiff's deposition, the following exchange took place

between Plaintiff and Defendant's counsel:

> Q.    I understand from the lawsuit that you have filed in this case that you have alleged that [Defendant] discriminated against you on the basis of your gender. Is that one of the claims you are making in this case?
>
> A.    Yes.
>
> Q.    In other words, you believe that [Defendant's] decision to terminate your employed [sic] was motivated by the fact that you are a woman; is that your claim?
>
> A.    No.
>
> Q.    Okay. What is–What is the basis for your claim that [Defendant] discriminated against you because of your gender?
>
> A.    Just the derogatory comments that were always said to me.
>
> Q.    Okay. And do you believe that the derogatory comments that were said to you were based on the fact that you are a woman?
>
> A.    Yes.
>
> Q.    So, in short, the claim of sex discrimination that you have made is that you believe the fact that you are a woman played a part in [Defendant's] decision to terminate you; is that your contention?
>
> A.    I really don't know why, if that had a bearing on it or not.

Def. App'x at 9. Further, Plaintiff acknowledges that Defendant disciplined her on two separate occasions: once when she received a written Employee Warning Report and again when Defendant placed her on two-day decision making leave and probation. However, Plaintiff disputes the basis for the discipline. The reasons Defendant gave for Plaintiff's ultimate termination included her refusal to contact and supervise Rimrodt and her failure to maintain a flower bed. Plaintiff admits that she failed to contact and supervise Rimrodt,

and that she failed to maintain the flower bed, but submits that neither were her responsibility.

Plaintiff asserts that the reasons given for her termination were not "the true reason for her termination," Plaintiff's Response ¶ 19, but Plaintiff does not clearly allege, argue or produce any evidence which would support an inference that Plaintiff's termination was in any way related to her gender. Based upon the record as a whole, the undisputed facts do not give rise to an inference of gender discrimination.

Even if Plaintiff could demonstrate a prima facie case of gender discrimination on this record, the Defendant has set forth a legitimate, nondiscriminatory reason for Plaintiff's termination, namely, dissatisfaction with Plaintiff's work performance. This dissatisfaction is well documented, Defendant's App'x at 34-49, and Plaintiff has not demonstrated that Defendant's stated reasons are pretextual. *See, e.g., McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (setting forth plaintiff's burden to prove pretext).

### b. *Sexual harassment/hostile work environment*

Plaintiff claims that she was sexually harassed throughout the course of her employment with Defendant. "To set forth a prima facie case of a hostile work environment, [Plaintiff] must demonstrate '(1) that she is a member of a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition or privilege of her employment.'" *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (quoting *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)) (internal marks omitted). "'To be actionable under Title VII, the work environment must have been both objectively and subjectively offensive.'" *Id.* (quoting *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004)).

> To decide whether a work environment is objectively offensive, that is, one which a reasonable person would find

14

> hostile or abusive, [the court should] examine all the
> circumstances, including the frequency of the discriminatory
> conduct, its severity, whether it is physically threatening or
> humiliating or a mere offensive utterance, and whether the
> conduct unreasonably interfered with the employee's work
> performance.

*Bainbridge*, 378 F.3d at 759.

Viewing the facts in the light most favorable to Plaintiff, she has established the first three requirements set forth above. However, Defendant argues that Plaintiff has not shown the harassment was so severe or pervasive that it altered a condition of her employment. To overcome summary judgment on her hostile work environment claim, Plaintiff must present evidence from which a reasonable jury could find that the harassment "was more than merely offensive, immature or unprofessional, for conduct that does not exceed that threshold of severity is insufficient to constitute a prima facie case of sexual harassment." *Henthorn*, 359 F.3d at 1027.

Plaintiff alleges that over a period of several years, several co-workers and one supervisor made comments and engaged in conduct which Plaintiff found to be offensive. Examples of comments and conduct that Plaintiff found offensive include: (1) an individual told her she received preferential treatment regarding a safety issue; (2) a male employee told her that he was watching her with his binoculars from his apartment while she was at the farmer's market; (3) Plaintiff's male supervisor repeatedly told her to "get a haircut," once asked to smell her breath, once raised his middle finger at her, frequently told her, "You're then man," and once stated, "I want a girl in a swimsuit with a body like [Plaintiff]"; (4) Plaintiff once drove to a training session by herself while three male employees drove together and did not speak to Plaintiff during the training; (5) Rimrodt asked Plaintiff to come over to his house to see his collection of frisbee golf discs and made other sexually suggestive and harassing comments; and (6) Plaintiff was excluded from Defendant's employee photo.

Viewed in the light most favorable to Plaintiff, these allegations demonstrate that Plaintiff was subjected to many rude, unpleasant and unwelcome comments and behaviors. However, this is not sufficient to demonstrate a hostile working environment. *See Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006) ("To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant."). Further, the conduct Plaintiff complains of was relatively sporadic as it took place over a period of several years. "Allegations of a few isolated or sporadic incidents" do not establish a hostile working environment. *Id.* Instead, "the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Id.* (quoting *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003)). Plaintiff has not met this burden, and as a result, Plaintiff has not set forth a prima facie case of a hostile work environment. *Cf. Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir. 2003) (concluding district court erred in finding triable issue for the jury on plaintiff's hostile work environment claim where the harassing conduct consisted of belittling and sexist remarks on almost a daily basis).

### c. Retaliation

Plaintiff claims that Defendant retaliated against her when Defendant fired her after she made a sexual harassment complaint to her supervisor about Rimrodt. To establish a prima facie retaliation case, Plaintiff must show that: "(1) [she] engaged in protected activity, (2) [she] suffered an adverse employment action; and (3) [there was] a causal connection between the protected activity and the adverse employment action." *Takele v. Mayo Clinic*, 576 F.3d 834, 839 (8th Cir. 2009).

Defendant concedes that Plaintiff satisfies the first two requirements. However, Defendant argues that no reasonable jury could find there is a causal connection between Plaintiff's termination and her complaint of sexual harassment against Rimrodt. The court agrees.

16

Plaintiff argues that the timing of her termination supports her position. Plaintiff points out that she was terminated within one week after she made a complaint against Rimrodt. "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005) (citations omitted). Plaintiff has not provided any evidence, aside from the timing of her termination, to support her claim that she was terminated in retaliation for making a sexual harassment complaint against Rimrodt. Thus, Plaintiff has failed to make a prima facie showing of retaliation.

However, even if the timing of the two events is sufficient to make a prima facie showing, *see, e.g., id.* at 525, Defendant sets forth a legitimate nondiscriminatory reason for Plaintiff's termination. Specifically, Defendant asserts that Plaintiff was terminated because of Plaintiff's history of unapproved conduct and discipline, as well as Plaintiff's refusal to contact and supervise Rimrodt and failure to maintain a flower bed.

Plaintiff admits that she did not maintain the flower bed, but avers that her supervisor, Angela Cole, told Plaintiff that Cole would "maintain the flower bed so to be more visibly active in the community." Plaintiff's App'x at 156. Assuming this is true and enough to create a genuine issue of material fact as to pretext, Plaintiff admits that she was instructed to supervise Rimrodt by Cole and that she refused to do so. Defendant listed this refusal to supervise Rimrodt as a legitimate, nondiscriminatory reason for Plaintiff's termination. Plaintiff has not demonstrated that this legitimate, nondiscriminatory reason for Plaintiff's termination was pretextual.

### d. Conclusion

Because Plaintiff has failed to make a prima facie showing of gender discrimination/disparate treatment, sexual harassment/hostile work environment or retaliation, the court shall grant Defendant's Motion as to Count I and Count II of the

Complaint. Alternatively, even if Plaintiff had made a prima facie showing on any one of her Title VII or ICRA claims, she failed to demonstrate Defendant's legitimate, non-discriminatory reasons for terminating her were pretext for discrimination, and the court would still grant Defendant's Motion as to Counts I and II.

## C. Plaintiff's Wrongful Termination Claim

Plaintiff claims that Defendant violated her right to due process when "Defendant failed to follow the progressive discipline policy outlined in the Manual" and "failed to provide Plaintiff with a fair hearing regarding her termination[.]" Complaint at ¶¶ 47, 49. In support of her claims, Plaintiff cites *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 203 (Iowa 1997) and *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 283 (Iowa 1995) for the proposition that Defendant's Manual eliminated the at-will nature of Plaintiff's employment and created an employment contract. Defendant disagrees and asks the court to dismiss Plaintiff's claim because: (1) Plaintiff was an at-will employee; (2) the Manual did not create any contractual rights in favor of Plaintiff; (3) Plaintiff was not entitled to due process; and (4) even if Plaintiff was entitled to due process, the City Council meeting which addressed Plaintiff's concerns satisfied any such requirement.

### 1. Progressive discipline procedure/contractual interest

Iowa courts utilize a unilateral contract theory when considering whether an employee handbook creates a contract. *See Anderson*, 540 N.W.2d at 283. "An employee handbook is a unilateral contract when three elements are present: (1) the handbook is sufficiently definite in its terms to create an *offer*; (2) the handbook is communicated to and accepted by the employee so as to constitute *acceptance*; and (3) the employee provides *consideration*." *Id.* Progressive disciplinary procedures in an employee handbook may be enforceable if they are deemed to be part of an employment contract. *Id.*

However, Iowa courts have found the existence of a disclaimer in an employee handbook often clarifies "the intent of the employer not to make an offer," thereby

removing the basis for a unilateral contract. *Id.* at 287. For example, in *Anderson*, the Iowa Supreme Court found that an employer was not bound to follow the progressive disciplinary procedure set forth in its employee handbook when the handbook contained the following disclaimer: "This Employee Handbook is not intended to create any contractual rights in favor of you or the Company. The Company reserves the right to change the terms of this handbook at any time." *Id.* at 288. The Iowa Supreme Court concluded, based on the disclaimer, no reasonable person reading the employee handbook could believe the employer assented to be bound to the provisions of the handbook. *Id.* at 289.

In the present case, Defendant's Manual contained at least two disclaimers. The first disclaimer was located with the progressive discipline policy and stated, "While the disciplinary action may progress from the lowest to the highest form of discipline depending on the severity of the infraction, there may be certain infractions which are serious enough to warrant **skipping some or all** of the lower levels and taking more severe action immediately." Def. App'x at 17 (emphasis in original). The second disclaimer is located on the first page of Section 1 of the Manual and states, "**Although we sincerely hope that your employment relationship with [Defendant] will be long term, this relationship may be terminated by you or [Defendant] at any time, for any reason, with or without cause. Nothing in this [Manual] changes the at-will nature of your employment with [Defendant]**." *Id.* at 16 (emphasis in original). Finally, Plaintiff signed an "Employment Acknowledgment Form," which indicated that she received a copy of the Manual and that she understood that the Manual was not a contract or a guarantee of employment with Defendant. *Id.* at 16; Def. Statement of Facts at ¶ 13; Pl. Response at ¶ 13. These disclaimers defeat Plaintiff's claim that Defendant's Manual was a binding unilateral contract and Defendant was bound to follow the Manual's progressive disciplinary procedure. *See also Phipps*, 558 N.W.2d at 204 (finding employer's

handbook and manual did not create an enforceable contract where they each included prominent, unambiguous disclaimers).

### 2. Due process/liberty interest

Plaintiff also claims that Defendant wrongfully terminated her employment and failed to give her a fair hearing, depriving her of due process. "A government employee is entitled to procedural due process only when [s]he has been deprived of a constitutionally protected property or liberty interest." *Winegar v. Des Moines Ind. Comm. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994). "A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it." *Id.* "Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee." *Id.* Plaintiff points to no statute limiting Defendant's ability to terminate Plaintiff, and the court has already found that Plaintiff did not have an employment contract with Defendant. However, as a public employee, Plaintiff must be afforded certain constitutional rights in relation to her employment. *See Anderson v. Low Rent Housing Comm'n of Muscatine*, 304 N.W.2d 239, 243 (Iowa 1981). "Among these rights is the right to procedural due process when charges are brought against an employee which might seriously damage standing and association in the community or impose a stigma or other disability that forecloses the freedom of the employee to take advantage of other employment opportunities." *Id.*

"To violate the constitutionally protected liberty interest the accusations must be of grave consequence. They must involve allegations of dishonesty, immoral, or illegal conduct that call into question the terminated employee's honesty, reputation, or good name." *Id.* at 244-45. Plaintiff does not raise any argument that her termination by Defendant might seriously damage her standing in the community or tarnish her reputation. Furthermore, Defendant's listed reasons for Plaintiff's termination are not the kind of accusations which would implicate an employee's constitutionally protected liberty interest.

*See id.* at 244 (noting "[o]ther courts have held that accusations of incompetence, insubordination, hostility to authority, and unprofessional or unethical conduct do not violate a constitutionally protected liberty interest" and listing cases). Thus, Plaintiff's termination did not violate a liberty interest protected by the Fourteenth Amendment, and she was not entitled to a due process hearing. *See id.* at 245.

In any event, Plaintiff was afforded a hearing before the City Council. Thus, even if Plaintiff was entitled to procedural due process under the facts of this case, the City Council hearing was sufficient to satisfy the notice and hearing requirements. *See, e.g., Borschel v. City of Perrty*, 512 N.W.2d 565, 568 (Iowa, 1994) ("The due process requirement is satisfied where the employee is notified of the reasons for discharge and furnished the opportunity of a name clearing hearing.").

### 3. *Public policy*

In her Resistance, Plaintiff argues that Iowa recognizes a public policy exception to at-will employment. Plaintiff claims that "[t]he State of Iowa has a policy of protecting adolescents and children," and, therefore, she should not be terminated for expressing concern about Rimrodt "performing unsupervised community service in an area of the parks where children are present and play." Resistance at 12.

While it is true that Iowa courts recognize a public policy exception to at-will employment, Plaintiff has presented no evidence that she was fired because of her efforts to protect children. The fact that Plaintiff was terminated shortly after she complained about Rimrodt's presence in the parks, without more, is insufficient to generate a jury question on whether Defendant retaliated against Plaintiff for complaining about Rimrodt. *See Phipps*, 558 N.W.2d at 203.

### 4. *Conclusion*

The court concludes that there is no genuine issue of material fact as to Plaintiff's claim for wrongful termination. Accordingly, Defendant is entitled to summary judgment

on Count III of the Complaint.

## D. Plaintiff's Back Wages Claim

In Count IV of the Complaint, Plaintiff alleges that she was entitled to be paid wages at the same scale set forth in the CBA and that Defendant failed to pay Plaintiff at that scale. As a result, Plaintiff seeks back wages. Defendant argues that the court lacks jurisdiction to decide this claim.

As discussed above, Plaintiff filed a Prohibited Practice Complaint with PERB on December 18, 2008. In her Prohibited Practice Complaint, Plaintiff alleged that Defendant engaged in prohibited practices in violation of Iowa Code sections 20.10(2)(c) and (f) when: (1) Defendant unilaterally determined that Plaintiff was not included within the bargaining unit represented by Teamsters Local 238; (2) Defendant did not compensate Plaintiff in accordance with the CBA pay scale; and (3) Defendant told Teamsters Local 238 that Plaintiff was ineligible for membership with Teamsters Local 238 because Plaintiff was not a member of the bargaining unit. Defendant's App'x 87-88.

Pursuant to Iowa Code section 20.11, a party may commence proceedings alleging that another party has engaged in a prohibited practice under Iowa Code section 20.10 by filing a complaint with PERB within ninety days of the alleged violation. An ALJ found that Plaintiff failed to file her Prohibited Practice Complaint within the ninety day period. Plaintiff does not now appeal PERB's denial of her Prohibited Practice Complaint. Instead, Plaintiff asserts that she was a member of the bargaining unit and was entitled to all of the CBA's benefits. Plaintiff maintains that the court has jurisdiction to consider whether Defendant violated the CBA under Iowa Code section 20.17(5), which provides that the "[t]erms of any collective bargaining agreement may be enforced by a civil action in the district court of the county in which the agreement was made upon the initiative of either party."

Under certain circumstances, the court may have jurisdiction to consider alleged

violations of the CBA. *Cf. O'Hara v. State*, 642 N.W.2d 303, 308-312 (Iowa 2002) (discussing state court jurisdiction and concluding that while the PERB has exclusive original jurisdiction over all claims alleging a breach of the duty of fair representation under Iowa Code section 20.17(1), a public employee may raise a claim in Iowa District Court against a public employer for breach of a CBA under Iowa Code section 20.17(5)). For example, where a state law claim is founded upon rights created by a CBA, and the question presented to the court requires interpretation or construction of the CBA, the state law claim may be preempted under federal law. *See, e.g., Trustees of the Twin City Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006).

In this case, however, Plaintiff is not actually alleging that Defendant breached the CBA because Plaintiff cannot demonstrate that she was ever covered under its terms. Instead, Plaintiff is asking the court to make a determination that Plaintiff was a member of the bargaining unit and should have been covered under the CBA. The court can find no case or statute vesting the court with the authority to make such a determination.

The procedure a public employee must follow in an effort to expand the bargaining unit so that the employee might be covered under the terms of an applicable CBA is set forth in Iowa Code section 20.13. Section 20.13 charges PERB with making the determination of an appropriate bargaining unit. An employee who would like PERB to make this determination must file a petition with PERB, and, within thirty days after the petition is received, PERB is required to conduct a public hearing and promptly make a determination after considering a series of relevant factors. Plaintiff has not demonstrated that she ever filed a petition asking PERB to make a bargaining unit determination under Iowa Code section 20.13, and the court does not have original jurisdiction to make such a determination. *Cf. Pub. Emp't Relations Bd. v. Stohr*, 279 N.W.2d 286, 290 (Iowa 1979) ("When resolution of a controversy has been delegated to an administrative agency,

[the] district court has no [o]riginal authority to declare the rights of parties[.]"). Therefore, the court shall grant Defendant's Motion with respect to Count IV of the Complaint.

### E. Iowa's Open Meeting Law

In the Complaint, Plaintiff alleges that Defendant held a closed meeting in violation of Iowa Code section 21.3, which requires governmental bodies to hold open meetings unless a closed session is expressly authorized by law. Defendant seeks summary judgment on this claim, arguing that the closed meeting was expressly authorized by Iowa Code section 21.5(1)(c), which states:

> 1. A governmental body may hold a closed session only by affirmative public vote of either two-thirds of the members of the body or all of the members present at the meeting. A governmental body may hold a closed session only to the extent a closed session is necessary for any of the following reasons:
>
> . . . .
>
> c. To discuss strategy with counsel in matters that are presently in litigation or where litigation is imminent where its disclosure would be likely to prejudice or disadvantage the position of the governmental body in that litigation.

Plaintiff counters by arguing that litigation was not imminent as required under Iowa Code section 21.5(1)(c). In Plaintiff's Motion, Plaintiff asks the court to grant her partial summary judgment on this claim because "there is no genuine issue of material fact that Defendant is a governmental body subject [to] the Iowa Open Meetings [L]aw and that Defendant held a closed session of its City Council on November 10, 2008 in violation of Iowa's Open Meetings Law." Plaintiff's Motion at 1.

"Iowa's open meetings law 'seeks to assure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people.'" *Mason v.*

*Vision Iowa Bd.*, 700 N.W.2d 349, 353-54 (Iowa 2005) (quoting Iowa Code § 21.1). "To this end, '[a]mbiguity in the construction or application of . . . Chapter [21] should be resolved in favor of openness.'" *Id.* (quoting Iowa Code § 21.1). Neither the Iowa legislature nor Iowa appellate courts have defined the meaning of the term "imminent" in the context of Iowa Code section 21.5(1)(c). However, in *State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006) (quoting *Webster's Third New Int'l Dictionary* 1330 (2002)), the Iowa Supreme Court looked to the dictionary definition of "imminent" and recognized, for purposes of Iowa's self-defense statute, that "imminent" means "'ready to take place,' 'near at hand,' 'hanging threateningly over one's head,' and 'menacingly near.'"

As noted above, Plaintiff filed a grievance with the City Council after her earlier grievance was denied by the City Administrator. In the grievance, Plaintiff set forth her complaints and generally alleged that, during her employment with Defendant, her supervisors did not follow Defendant's policies and procedures. Plaintiff also alleged that she was subjected to sexual harassment. Plaintiff then requested the following relief: (1) "I would like you to carefully consider each of my 8 concerns and respond to them in writing on an individual basis noting them by number(s)"; (2) "I would like my employee work history cleared of alleged oral warnings and termination due to failure of [Defendant] and its employees to follow [Defendant's] policies"; (3) "I would like the City Administrator to take appropriate action with the individual(s) who failed to properly fulfill their supervisory duties"; (4) "I would like the City Administrator to take appropriate action with the Human Resources department personnel for not overseeing and ensuring all documents were properly and timely complete, filed, signed, dated and recorded on [Defendant's] letterhead"; (5) "I would like monetary compensation for emotional and physical duress while being subjected to the incidences dating back [to the] notification on 10/10/2007 [for the] Employee Written Warning. This amount would need to be determined between my attorneys and [Defendant]"; (6) "I would like my job back

including all benefits that I was receiving prior to termination on 10/15/2008"; and (7) "I would like equal pay for equal work when working for the Streets Dept. and performing the duties of that department, including back pay for time already worked." Defendant's App'x at 54. Plaintiff also asked the City Administrator to address Defendant's failure to grant Plaintiff access to all contents of Plaintiff's personnel file during Plaintiff's employment. Plaintiff included with the grievance a letter to the City Council and noted at the bottom of the letter that a copy had been sent to Plaintiff's attorneys and to Teamsters Local 238.

It is undisputed that on November 10, 2008, Plaintiff attended a City Council meeting with her attorney to discuss her grievance. A City Attorney was also present. Early in the meeting, the City Council unanimously voted to go into closed session pursuant to Iowa Code section 21.5(1)(c). The only issue now argued by the parties is whether litigation was sufficiently imminent to allow the City Council to go into closed session under the litigation exception.

Plaintiff maintains that she is entitled to summary judgment because the City Council members did not have a consistent understanding of the word "imminent" as used in Iowa Code section 25.5(c), and, prior to the City Council meeting, she had never threatened litigation or mentioned the possibility of litigation to members of the City Council. Plaintiff's Motion at ¶¶ 5-6. Defendant argues that litigation was imminent because (1) Plaintiff's grievance included demands which raised legal implications; (2) Plaintiff indicated in her letter to the City Council that a copy of the grievance had been sent to Plaintiff's attorneys and to Teamsters Local 238; (3) Plaintiff was represented by counsel at the City Council meeting; and (4) shortly after the City Council denied Plaintiff's grievance at the City Council meeting, Plaintiff filed complaints with PERB, the Iowa Civil Rights Commission and the court.

Although exceptions to Iowa's Open Meetings Law should be construed narrowly,

*cf. Floyd County Bd. of Educ. v. Ratliff*, 955 S.W.2d 921, 923 (Ky. 1997) (construing exceptions narrowly under Kentucky law), the court concludes that the litigation exception applied under the limited facts of this case. Defendant has demonstrated that, on the date of the City Council meeting, litigation was sufficiently imminent to permit the City Council to go into a closed session. *Cf. Fiscal Court of Jefferson County v. Courier-Journal and Louisville Times Co.*, 554 S.W.2d 72, 73 (Ky. 1977) (recognizing that an implied threat of litigation may be sufficient to permit a public body to hold a closed session); *see also Board of Educ. v. Freedom of Info. Comm'n*, 585 A.2d 82, 85-87 (Conn. 1991) (finding a letter to a public body articulating specific demands for legal relief in an effort to vindicate an alleged legal right was sufficient to constitute "pending" litigation and allow the public body to hold a closed meeting under Connecticut's open meetings law). For these reasons, the court shall grant summary judgment to Defendant as to Count V of Plaintiff's Complaint.

## IV. CONCLUSION

In light of the foregoing, Defendant's Motion (docket no. 8) is **GRANTED**, Plaintiff's Motion (Docket no. 10) is **DENIED** and the Complaint (docket no. 2) is **DISMISSED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 4th day of October, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA